DISTRICT OF OREGON
**F I L E D**
**March 26, 2024**
**Clerk, U.S. Bankruptcy Court**

Below is an opinion of the court.

_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>**Alberto Rodriguez** and **Tressa M. Rodriguez**,<br><br>Debtors. | Case No. 21-31654-dwh7<br><br>MEMORANDUM DECISION DENYING MOTION AGAINST COMCAST CABLE COMMUNICTIONS MANAGEMENT LLP FOR STAY AND DISCHARGE VIOLATION SANCTIONS[1] |

## I.   Introduction

In this chapter 7 case, debtor Tressa Rodriguez has moved to hold Comcast Cable Communications Management LLC in contempt for violating the automatic stay and the discharge.

---

[1] This disposition is specific to this matter. It may be cited for whatever persuasive value it may have.

Page 1 – MEMORANDUM DECISION DENYING MOTION AGAINST etc.

Comcast did not attempt to collect a prepetition debt before the discharge or a discharged debt thereafter. For that and other reasons set forth below, I will deny the motion.

## II. The motion

Rodriguez alleges that Comcast violated the automatic stay by "the mailing of at least one (1) collection letter" after receiving notice of Rodriguez's bankruptcy case. She also alleges that Comcast violated the discharge by "pulling Debtor's credit for collection purposes," "contacting Debtor via its debt collectors and agents, Valor and Sunrise, by mailing at least three (3) collection letters, all regarding a discharged debt . . .," and because "Sunrise, as agent for and on behalf of Comcast, is reporting the discharged debt as an outstanding collections account to the credit bureaus in an attempt to persuade payment."[2]

## III. Facts

At the evidentiary hearing, I heard testimony from Justin Martinez on behalf of Comcast and from Rodriguez and joint debtor Alberto Rodriguez. Because Alberto Rodriguez is not a party to the motion and I do not refer to him again in this decision, I will refer to Tressa Rodriguez as Rodriguez. I admitted exhibits offered by both Rodriguez[3] and Comcast.[4]

---

[2] ECF No. 37 at 7.
[3] ECF Nos. 64-3 – 64-13, 64-15.
[4] ECF Nos. 61-2, 61-6, 61-8.

Page 2 – MEMORANDUM DECISION DENYING MOTION AGAINST etc.

Rodriguez was a customer of Comcast from June 2019, receiving cable television, internet, and voice services and use of Comcast equipment. Comcast issues its monthly bills several days before the first date of the billing period. To calculate the amount due, the bill determines the "balance forward now" and adds new charges. If a customer pays each bill by the stated due date, and if there are no credits other than for payments, each bill will show a "balance forward due now" of $0, and the amount due will consist just of the new charges.

Rodriguez was not under any term contract when the petition was filed, and she could have terminated services and any post-termination liability at any time. Comcast allows cancellation by a phone call or visit to its website or stores. If a customer cancels service during a period for which the customer has paid the bill, Comcast will issue the customer a prorated credit for the portion of the prepayment attributable to the period after cancelation.

Comcast issued its final prepetition bill on July 3, 2021, for the period July 8 through August 7. That bill showed a previous balance of $594.50, payment of $276.56, a credit of $8.64, a balance forward of $309.30, new charges of $304.83, and an amount due of $614.13.[5] The new charges included equipment charges of $28.95, $9.95, and $14.[6] Equipment charges also appeared on later bills.

---

[5] ECF No. 64-4 at 1.
[6] ECF No. 64-4 at 3.

Page 3 – MEMORANDUM DECISION DENYING MOTION AGAINST etc.

Rodriguez claims to have ceased using Comcast's service before bankruptcy, when she began receiving services from another provider. But she neither communicated to Comcast her intention to cancel her contract nor returned Comcast's equipment, and Martinez testified without contradiction that Comcast does not monitor a customer's use of its services and thus does not know whether a customer stops using its services.

The petition was filed on July 28, 2021. The first bill that Comcast issued after the petition was dated August 3 and covered August 8 through September 7. It showed a previous balance of $614.13, no payment, a credit of $308.84, a balance forward of $305.29, regular monthly charges of $278.78, a "one-time charge" of negative $302.84 (a credit for that amount), other charges of $20.09, net new charges of negative $3.97, and an amount due of $301.32.[7] The $308.84 credit was for "001 Bankruptcy" on August 2, and the one-time charge of negative $302.84 consisted of a "Cbost Adjustment" credit of $308.84 on August 1 and a $6 late fee on July 21.[8]

The September 3, 2021, bill was for September 8 to October 7. That bill showed a previous balance of $301.32, no payment, a credit of $0.96, a balance forward of $300.36, regular monthly charges of $278.78, one-time charges of $18, other charges of $21.19, total new charges of $317.97, and an amount due of $618.33.[9] The bill detail showed that the $0.96 credit was for

---

[7] ECF No. 64-5 at 1.
[8] ECF No. 64-5 at 3.
[9] ECF No. 64-6 at 1.

Page 4 – MEMORANDUM DECISION DENYING MOTION AGAINST etc.

"Courtesy Sports – Adjust" on August 30, and the $18 of one-time charges was the sum of reactivation fees on August 4 of $6 each for TV, voice, and internet service.[10] Martinez testified that "reactivation takes place automatically once a debt has been satisfied," and here the reactivation occurred on August 3.

The October 3, 2021, bill was for October 8 to November 7. That bill showed a previous balance of $618.33, no payment, a balance forward of $618.33, new charges of $300.30, and an amount due of $918.63.[11]

On October 25, 2021, Comcast issued its "Disconnect Notice." That notice reflected the previous balance of $918.63, no payment, a balance forward of $918.63, partial charges of negative $355.75, regular monthly charges of negative $39.99, one-time charges of $470, other charges of negative $21.86, and an amount due of $971.03.[12] The $355.75 credit reversed charges of that amount for September 24 to November 7 "as a result of your service disconnection on Sep. 24," and the one-time charge of $470 was the sum of unreturned-equipment charges of $120, $150, and $200.[13]

The discharge was entered on October 26, 2021.[14]

---

[10] ECF No. 64-6 at 3.
[11] ECF No. 64-7 at 1.
[12] ECF Nos. 61-5 at 1, 64-8 at 1.
[13] ECF Nos. 61-5 at 3, 64-8 at 3.
[14] ECF No. 22.

Page 5 – MEMORANDUM DECISION DENYING MOTION AGAINST etc.

On February 4, 2022, Valor Intelligent Processing, LLC, sent Rodriguez a notice that Comcast had placed her account with Valor for collection. Valor stated that the amount due was $501.03.[15]

On July 15, 2022, Sunrise Credit Services, Inc., identifying itself as a debt collector for Comcast, sent Rodriguez a notice that the balance due as of November 8, 2021, was $501.03.[16] On August 17, 2022, Sunrise sent Rodriguez another statement identifying the same balance due.[17]

### IV. Discussion

#### A. *Statutory jurisdiction and constitutional authority*

The district court has jurisdiction over this contested matter, a civil proceeding arising in this case, under 28 U.S.C. § 1334(b). The district court has referred to this court all bankruptcy cases and proceedings in this district.[18] The motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O), which this court may hear and determine.[19]

#### B. *Legal standards for stay violation and contempt*

Rodriguez alleges that Comcast violated 11 U.S.C. § 362(a)(6), which stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]"[20] She also alleges that Comcast violated the discharge injunction of 11 U.S.C. § 524(a)(2), which

---

[15] ECF No. 64-11.
[16] ECF No. 64-12.
[17] ECF No. 64-13.
[18] LR 2100-2(a)(1).
[19] 28 U.S.C. § 157(b)(1).
[20] ECF No. 37 at 5–7.

Page 6 – MEMORANDUM DECISION DENYING MOTION AGAINST etc.

enjoins "the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor[.]"[21]

### C. 11 U.S.C. § 365 does not support the motion.

Rodriguez argues that her contract with Comcast was executory and was rejected by law, and rejection resulted in discharge of Comcast's claims for postpetition, or even postdischarge, contract breaches. The parties dispute whether the contract was executory. But Comcast's provision of equipment to her and her obligation to make periodic payments for it make the contract at least an unexpired lease. Below, I use the term "executory contract" to include unexpired lease.

Rodriguez relies on 11 U.S.C. § 365(g)(1), under which rejection "constitutes a breach" of an unassumed executory contract, effective "immediately before" bankruptcy. That section works in conjunction with 11 U.S.C. § 502(g)(1), under which a rejection claim "shall be determined, and shall be allowed . . . as if such claim had arisen before" bankruptcy.

Rejection relieves the estate of the obligation to perform the contract after the petition. Deeming the breach from rejection to have occurred before bankruptcy relegates any claim for breach damages to the status of a prepetition, nonpriority, unsecured claim, rather than a postpetition, priority administrative expense. Just as not every contract breach damages the

---

[21] ECF No. 37 at 7–10.

Page 7 – MEMORANDUM DECISION DENYING MOTION AGAINST etc.

nonbreaching party, neither 365(g)(1) nor 502(g)(1) determines that every rejection breach damages the counterparty. That conclusion is enforced by 502(g)(1)'s mandate that a rejection claim "be determined" as if the claim had arisen before bankruptcy. The existence and amount of claims in bankruptcy turns on nonbankruptcy law. Nothing in 365(g)(1) or 502(g)(1) declares that damages from the debtor's postpetition acts or omissions are part of, or merge backward into, the counterparty's claim for rejection damages. Because rejection does not nullify or terminate the contract,[22] rejection can be followed by further performance and future breaches.

That understanding of the operation of 365(g)(1) and 502(g)(1) is reflected in the 2018 decision of a Central District of California bankruptcy judge in *Licea v. 2042 Town Square West, LLC (In re Licea)*.[23] There, a lease to a chapter 7 debtor was deemed rejected, and after discharge, the landlord sued to collect postdischarge rent. The damages sought by the landlord "did not occur from the breach in the deemed rejection of the lease under 11 U.S.C. §365(g)," but "from a separate breach by the Debtor which occurred postpetition and postdischarge when she failed to pay rent . . .."[24] The court held that the landlord did not violate either the stay or the discharge.

---

[22] Mission Prod. Holdings, Inc. v. Tempnology, LLC, 139 S.Ct. 1652, 1662 (2019).
[23] No. 2:13-bk-34043 RK, 2018 WL 898221 (Bankr. C.D. Cal. Feb. 12, 2018).
[24] *Licea*, 2018 WL 898221 at *3.

*Licea* relies in part on the Ninth Circuit's 2007 decision in *Saddleback Valley Community Church v. El Toro Materials Company, Inc. (In re El Toro Materials Company, Inc.).*[25] In *El Toro*, the court held that the counterparty's claim for damages from the debtor's postdischarge injury to leased property did not "result[] from" rejection of the lease and thus was not capped under 11 U.S.C. § 502(b)(6).[26] Although *Licea* addresses only a counterparty's claims for postdischarge events, its reasoning applies to all postpetition acts and omissions, including a debtor's postpetition contract breaches. Both *Licea* and *El Toro* support the view that postpetition events do not merge backward into the rejection. Damages from postpetition acts or omissions are not part of the rejection-damages claim determined and allowed as if the claim arose before bankruptcy.

Reading 365(g)(1) and 502(g)(1) to determine the amount of a rejection-damages claim without including claims for future breaches is supported by the Fifth Circuit's 1993 decision in *O'Neill v. Continental Airlines, Inc. (Matter of Continental Airlines).*[27] When Continental Airlines filed its chapter 11 petition, it suspended operations for three days and rejected its collective bargaining agreement with pilots. Certain pilots filed claims for furlough pay under the CBA. Although "the pilots' claims for contract rejection damages were properly treated as prepetition claims allowable in

---

[25] 504 F.3d 978 (9th Cir. 2007).
[26] *El Toro*, 504 F.3d at 980–81.
[27] 981 F.2d 1450 (5th Cir. 1993).

bankruptcy in accordance with the purpose of § 365(g) stated above . . ., the award of contract rejection damages to the pilots who did not strike in no way precludes the pilots from making furlough pay claims pursuant to" the CBA.[28]

Rodriguez relies heavily on an Eleventh Circuit decision from 2020, *Medley v. DISH Network, LLC*.[29] At issue in *Medley* was whether charges by DISH Network that accrued after the petition date under a rejected contract were discharged. The court concluded that DISH's "prepetition breach of contract claim to recover" the unpaid charges "was discharged . . .."[30] But it did not explain its implicit conclusion that damages from a rejection breach encompass damages from future breaches that occurred only after bankruptcy and might never have occurred. *Medley* cannot be reconciled with *El Toro*'s holding that the counterparty's postpetition claim against the debtor does not merge backward into the rejection-damages claim. And in view of the Fifth Circuit's *Continental* decision, the Ninth Circuit's disagreement with *Medley* would not create a circuit conflict.

Even if that were not the case, for the above reasons, I doubt that the Ninth Circuit would follow *Medley*, because doing so would create vexing practical problems. In chapter 7 consumer cases, the trustee commonly rejects (by inaction) a contract for household consumer services, but the

---

[28] *Continental*, 981 F.2d at 1460.
[29] 958 F.3d 1063, 1068 (11th Cir. 2020); ECF No. 71 at 3.
[30] *Medley*, 958 F.3d at 1068.

Page 10 – MEMORANDUM DECISION DENYING MOTION AGAINST etc.

debtor has no desire to terminate the contract, and both the debtor and the counterparty continue to perform as if nothing had happened. And it's also common for a former chapter 7 debtor, who has continued to perform such a contract, to eventually slip up and break it. A counterparty who wishes to file against the estate the maximum allowable breach-damages claim would have to include damages for hypothetical future breaches. . More relevant to this dispute, a counterparty desiring not to provide postpetition services for free would have to terminate services unless the debtor either reaffirms the prepetition debt or volunteers to enter into a new, postpetition agreement.

Following the plain meaning of the statute leads to a more sensible understanding of how it works. The trustee's nonassumption of a contract means that the estate will have no liability for future breaches. But it leaves the debtor and counterparty free to continue their contractual relationship as they please. Because virtually all executory contracts in chapter 7 consumer cases—including for utility service, mobile-phone service, newspaper subscriptions, and online application or video-streaming subscriptions, as well as cable TV and internet subscriptions—are worthless to the estate but valuable to the individual debtor, this approach makes sense.

These practical considerations only emphasize what is already unambiguous in the statutory text: rejection by itself constitutes a prepetition breach, but subsequent actual breaches do not merge into it and are not treated as prepetition events.

Rodriguez also cites and quotes from *In re Humbert*,[31] a 2017 decision of a Northern District of Ohio bankruptcy judge. Its conclusion is similar to *Medley*'s. The quotation from *Humbert* includes a citation to the Sixth Circuit's 2002 decision in *Miller v. Chateau Communities, Inc. (In re Miller)*.[32] *Licea* considered and rejected both *Miller* and *Humbert*.[33] And for the reasons I doubt that the Ninth Circuit would follow *Medley*, I also doubt that it would follow *Miller* (or *Humbert*).

### D. *The disconnect notice did not violate the automatic stay.*

In her post-hearing brief, Rodriguez argues that Comcast violated the stay by issuing the disconnect notice.[34]

For the July 3 bill's billing period of July 8 through August 7, which straddled the July 28 petition date, the new charges amount, $304.83, comes to $10.16 per day. Of the total new charges, $203.22 is allocable to the 20 days before bankruptcy, and $101.61 is allocable to the 10 days after the petition date. In other words, of that bill's amount due of $614.13, the prepetition portion was $512.52, and the postpetition portion was $101.61.

Martinez said that the delinquent status of Rodriguez's account resulted in it being temporarily suspended, or deactivated, on August 2. When Comcast received notice of the bankruptcy, it issued credit for the prepetition

---

[31] 567 B.R. 512 (Bankr. N.D. Ohio 2017); ECF No. 71 at 8.
[32] 282 F.3d 874 (6th Cir. 2002).
[33] *Licea*, 2018 WL 898221, at **4–5.
[34] ECF No. 71 at 3.

Page 12 – MEMORANDUM DECISION DENYING MOTION AGAINST etc.

debt "and then some," which "settled . . . the delinquent balance at the time, and the system automatically reactivated the account . . . because the debt that was past due at the time was satisfied." He said the reactivation occurred on August 3.

The August 3 bill—the first after the petition date—includes credits of $614.13, which exceeds the $512.52 portion of the August 3 bill allocable to the prepetition period. To eliminate any prepetition debt from the bill, Comcast had only to credit $512.52; it was not required to credit the additional amount of $101.61. The August 3 bill's amount due, $301.32, includes no prepetition debt. That bill's amount due became the September 3 bill's previous balance, and the same is true of the September 3 and October 3 bills and the October 25 disconnect notice.

The September 3 bill included one-time charges of $6 to reactivate the TV, voice, and internet services, for a total of $18. Martinez said there's no indication in Comcast's records why it credited in the August 3 bill $101.61 more than was necessary to remove the prepetition debt, but "it's possible that it was done proactively in recognition of the reactivation fees to be assessed at a later time." Rodriguez has not argued that the $18 charge violated either the stay or the discharge. She argued at the hearing instead that deactivation and reactivation was relevant to her argument (addressed above) that the trustee's deemed rejection of the contract with Comcast prevented Comcast from billing for postpetition services. And even if

Rodriguez had argued that the $18 charge was a stay or discharge violation, she offered no evidence that she suffered any marginal injury from the inclusion of that $18 in Comcast's bills and the collection agency notices, which (as I conclude below) otherwise violated neither the stay nor the discharge.

The disconnect notice shows a previous balance of $918.63, none of which stems from the prepetition period. The notice says Rodriguez's "services have been disconnected" because her account is past due. The notice includes credits reversing prior charges for September 24 to November 7, noting "[s]ervices removed." From that language in the disconnect notice, as well as the absence from any prior bill of mentions of service disconnection or removal, I infer that Comcast disconnected her services on September 24. The disconnect notice also includes three charges totaling $470 for unreturned equipment, explaining that "[t]here is unreturned equipment on your account" that "must be returned within 10 days to avoid fees" and asking that she Rodriquez p]lease return your equipment." No prior bill includes any fee for unreturned equipment or requests return of equipment. I find that Rodriguez's obligation either to pay the unreturned-equipment fees or to return the equipment arose no earlier than when her services terminated for nonpayment on September 24. Thus, the unreturned-equipment fees listed in the disconnect notice arose after bankruptcy.

Page 14 – MEMORANDUM DECISION DENYING MOTION AGAINST etc.

Case 21-31654-dwh7    Doc 73    Filed 03/26/24

The postpetition bills and the disconnect notice, all of which predated the discharge, did not request payment of any prepetition debt and thus did not violate the stay.

### E. *The collection letters did not violate the discharge.*

The collection letters, which followed the discharge, ask for the same amount: $501.03.[35] That amount is the amount due on the disconnect notice, $971.03, less the unreturned-equipment fee of $470. Because no portion of the amount due on the disconnect notice is a prepetition debt, I find that the same is true of the $501.03 amount asserted in the collection letters. Thus, the collection letters did not violate the discharge.

Even if the $501.03 amount does constitute or include a discharged debt, there is at least a "fair ground of doubt as to whether the [discharge] order barred" the collection letters, barring contempt sanctions.[36]

### F. *Making and pulling credit reports did not violate the discharge.*

Rodriguez alleges in her motion that Comcast violated the discharge by "pulling Debtor's credit for collection purposes."[37] She also alleges that "Sunrise, as agent for and on behalf of Comcast, is reporting the discharged debt as an outstanding collections account to the credit bureaus in an

---

[35] ECF Nos. 64-11 – 64-14.
[36] Taggart v. Lorenzen, 139 S.Ct. 1795, 1799 (2019).
[37] ECF No. 37 at 2 ¶ 46.

Page 15 – MEMORANDUM DECISION DENYING MOTION AGAINST etc.

attempt to persuade payment" and "the reporting of the debt is also a violation."[38]

I agree with the conclusion of the 2020 decision of a Western District of Texas bankruptcy judge that "the singular act of pulling a credit report is neither the commencement of a legal proceeding under § 362(a)(1), an act to obtain possession of property of the estate under § 362(a)(3), nor an act to collect, assess, or recover claims against the debtor under § 362(a)(6)."[39] And *Keller v. New Penn Financial, LLC (In re Keller)*,[40] a 2017 decision of the Ninth Circuit Bankruptcy Appellate Panel cited by Rodriguez,[41] acknowledges that "postpetition credit reporting of overdue or delinquent payments, without more, does not violate the automatic stay as a matter of law"[42] and that "negative credit reporting, without more, does not violate the discharge injunction."[43]

## V. Conclusion

Rodriguez has not proved that Comcast made any postpetition attempts to collect any prepetition debt, and she has thus not proved that Comcast violated the automatic stay or the discharge.

---

[38] ECF No. 37 at 2–3 ¶ 47.
[39] Vargas v. Prestamos Del Rey, LP (*In re* Vargas), 617 B.R. 547, 551 (Bankr. W.D. Tex. 2020).
[40] 568 B.R. 118 (9th Cir. B.A.P. 2017).
[41] ECF No. 37 at 7–8; ECF No. 71 at 11.
[42] *Keller*, 568 B.R. at 122.
[43] *Keller*, 568 B.R. at 123.

Page 16 – MEMORANDUM DECISION DENYING MOTION AGAINST etc.

I will prepare and enter a separate order denying the motion.

### # # #